IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREW PERRONG,
1657 THE FAIRWAY #131
JENKINTOWN, PA 19046

      Plaintiff

vs.

FIRST STOP HANDICRAFTS LLC
622 NW 3RD ST
RENTON, WA 98057

AND

JACOB OTSTOT
622 NW 3RD ST
RENTON, WA 98057

      Defendants.

Case No.

JURY TRIAL DEMANDED

## COMPLAINT

### Preliminary Statement

1. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. ConsultantsLLC*, 140 S. Ct. 2335, 2343 (2020).

2. Plaintiff Andrew Perrong (Plaintiff) brings this action under the TCPA alleging that FIRST STOP HANDICRAFTS LLC (First Stop Handicrafts) commissioned a series of automated illegal telemarketing calls to originate new customers by calling cellular telephone

numbers listed on the National Do Not Call Registry, like Mr. Perrong's number, which is prohibited by the TCPA. The calls were made by First Stop Handicrafts and at the supervision, direction, and control of its principal, JACOB OTSTOT (Otstot).

3. First Stop Handicrafts is owned, operated, and controlled by JACOB OTSTOT.

4. The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes.

## Parties

5. Plaintiff Andrew Perrong is a Pennsylvania resident.

6. Defendant FIRST STOP HANDICRAFTS LLC is an Oregon corporation which is headquartered and has its principal place of business at 622 NW 3rd St. Renton, WA 98057. It does business in this District through processing credit card transactions for the illegal sale and importation of Viagra (sildenafil) and Cialis (tadalafil) tablets into this District, as it attempted to do with the Plaintiff.

7. Defendant JACOB OTSTOT is domiciled and resides at 622 NW 3rd St. Renton, WA 98057. He does business in this District through processing credit card transactions for the illegal sale and importation of Viagra (sildenafil) and Cialis (tadalafil) tablets into this District, as it attempted to do with the Plaintiff.

## Jurisdiction & Venue

8. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

9. This Court has jurisdiction over the defendants. First Stop Handicrafts regularly engages in business in this District, including making telemarketing calls into this District and soliciting business from this District for its illegal sale and importation of Viagra (sildenafil) and

Cialis (tadalafil) tablets into this District. It also processes credit card transactions for credit cards and individuals billed in this District.

10. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the telemarketing calls to the Plaintiff occurred in this District.

## The Telephone Consumer Protection Act

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii).

13. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). 47 U.S.C. § 227(b)(3).

14. According to findings by the Federal Communication Commission (FCC), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls (robocalls) to wireless numbers, services for which the called party is charged for the call, and residential lines.  Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The Growing Problem of Automated Telemarketing

16.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls*, FCC, (July 22, 2016, 10:30 AM), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls [https://archive.is/w2afC] (statement of FCC chairman).

17.     "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

18.     In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Fed. Trade Comm'n, *FTC Releases FY 2017 National Do Not*

*Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc [https://archive.is/oPZSW].

19. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html [https://archive.is/mS9Fb]; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018, 10:30 PM), https://www.wsj.com/articles/why-there-are-so-many-robocalls-heres-what-you-can-do-about-them-1530610203 [https://archive.is/V2UYp].

20. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years. *U.S. Endures 4.7 Billion Robocalls in July, According to YouMail Robocall Index*, YouMail (Aug. 6, 2019, 9:00 AM), https://www.prnewswire.com/news-releases/us-endures-4-7-billion-robocalls-in-july-according-to-youmail-robocall-index-300895976.html [https://archive.is/pnU5s].

21. According to online robocall tracking service "YouMail," 5.6 billion robocalls were placed in October 2019 at a rate of approximately 180.6 million per day. *Robocall Index*, YouMail, https://robocallindex.com/ [https://archive.is/fwZD8]. In 2019, YouMail's robocall totals exceeded 58.5 billion. *Historical Robocalls By Time*, YouMail, https://robocallindex.com/history/time [https://archive.is/XWefY].

22. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. *Consumer Complaint Data Center*, FCC, www.fcc.gov/consumer-help-center-data [https://archive.is/wip/ojuBF].

The National Do Not Call Registry

23. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

24. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

25. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**Factual Allegations**

26. Defendant First Stop Handicrafts is a call center, credit card processing, and marketing firm that specializes in illegally importing, distributing, selling, and processing payments for Viagra (sildenafil) and Cialis (tadalafil) tablets without a lawful prescription.

27. Upon information and belief, First Stop Handicrafts is so named to mislead credit card merchant processing companies and law enforcement from the true nature of their business conduct and instead sound like some sort of gift shop or arts and crafts store.

28. Upon information and belief, the true nature of First Stop Handicraft's business model is to call up persons *en masse* from the generic-sounding "Global Pharmacy" to solicit them to purchase Viagra (sildenafil) and Cialis (tadalafil) tablets without a prescription. When a sale is made, it processes the credit card transaction under the name "FIRST STOP HANDICRAFTS." It then ships the illegal goods from overseas, potentially India, and remits the proceeds from the sales to its true principals, who are believed to reside in India.

29. First Stop Handicrafts uses telemarketing to solicit potential customers.

30. First Stop Handicrafts is not registered as a telemarketer with the Attorney General of Pennsylvania.

31. One of the strategies used by the Defendant involves the use of automated calls from the generic-sounding "Global Pharmacy" to solicit potential customers.

32. The Plaintiff did not consent to receive these calls and his number is on the National Do Not Call Registry.

33. Plaintiff Perrong is a "person" as defined by 47 U.S.C. § 153(39).

34. Plaintiff has a private telephone number of (215) 208-XXXX.

35. The Plaintiff is charged for each call placed to that number.

36. The number is not associated with any business.

37. The Plaintiff registered the number on both the Federal and Pennsylvania State Do-Not-Call registries, was on such registries for more than thirty-one days prior to the calls, and never removed the number from these registries.

38. The number is used for Mr. Perrong's personal residential use.

39. First Stop Handicrafts and Otstot placed at least nine automated telemarketing calls and three automated text messages to Plaintiff on November 19, 2020.

40. These calls came from various caller IDs, including 215-208-5787, 215-208-7164, 619-377-8274, and 929-269-0598.

41. Some of the calls began with a "balloon popping" sound. This sound is indicative of the ViciDial Automatic Telephone Dialing System (ATDS) and is officially known as the "droplet" sound. It is played automatically as part of a macro when the Asterisk "meetme" application is executed and signifies that a new connection was established between the called party and a call center representative that the called party had not previously spoken to.

42. The use of "locally spoofed" caller ID numbers (caller ID numbers that appear to be from the same first six digits as the Plaintiff's telephone number or neighboring numbers) is also consistent with the use of an ATDS, since it takes special automated equipment to be able to transmit manipulated caller ID numbers.

43. The company with which Plaintiff spoke was only identified as "Global Pharmacy" and the representative was only named "Terry Smith."

44. Each of the calls Plaintiff received was for the purpose of soliciting the Plaintiff to purchase Viagra (sildenafil) and Cialis (tadalafil) tablets without a prescription.

45. Plaintiff has never ordered, taken, or used Viagra (sildenafil) or Cialis (tadalafil) in the past and has no need for it.

46. However, Plaintiff knew that it would not be easy, or potentially impossible, to identify the caller without placing an order. Accordingly, Plaintiff placed an order for 105 pills of Viagra (sildenafil) and 105 pills of Cialis (tadalafil) for $200.00 total, for the sole purpose of identifying the true identity of the caller.

47.     However, to avoid actually making a purchase or result in the shipment of this medication, the Plaintiff locked his credit card so the charge would not go through. Plaintiff also instructed the caller not to call again.

48.     Plaintiff received an attempted charge placed by "FIRST STOP HANDICRAFTS" in RENTON, WA on his Visa card for $200.00 shortly after the telephone call from Defendants.

49.     Subsequently to the charge, Plaintiff called his Visa card issuer and confirmed the identity of the person who attempted to charge his card to be the Defendants.

50.     Nowhere during the call was Plaintiff asked about his medical history, age, sexual history, need for Viagra, prescription history and usage, or potentially fatal health conditions.

51.     To the best of Plaintiff's knowledge, none of the Defendants or the persons to whom Plaintiff spoke are doctors, pharmacists, licensed as a pharmacy, or licensed under any authority or capacity to dispense any prescription medication, including, but not limited to, Viagra (sildenafil) or Cialis (tadalafil).

52.     Upon information and belief, Defendants illegally import generic Viagra (sildenafil) and Cialis (tadalafil) into the United States from overseas and cause it to be distributed to persons through the channels of interstate commerce (the mails of the United States) without a prescription.

53.     Legally speaking, Defendants are acting as illegal drug dealers by using the channels of interstate commerce to cause to be imported and sell controlled prescription drugs without a prescription.

54. It is generally recognized that the illegal importation of prescription drugs, especially Viagra (sildenafil) and Cialis (tadalafil) into the United States, has serious, potentially fatal, health effects.

55. Defendants' conduct of calling persons *en masse* to solicit illegal sales of such drugs without a prescription, for recreational use, without so much as an age or health verification, is a tremendous public health and safety concern. Additionally, such conduct warrants an injunction to protect the health, safety, and public interest of the American consumer.

56. Because Plaintiff asked to be placed on Defendants' Do-Not-Call list and was not, it is evident that Defendants do not maintain such a list. Likewise, based on this fact, it is clear that Defendants do not have any Do-Not-Call policies or procedures in place. Based on the nature of their illegal activities, Defendants' noncompliance with the law in this regard is unsurprising.

57. The communications received by Plaintiff demonstrate that the messages were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as it seeks to have him purchase drugs. The messages therefore qualified as telemarketing. *See* 47 C.F.R. § 64.1200(f)(12).

58. Mr. Otstot made the automated calls for First Stop Handicrafts. He either physically programmed the automatic dialer to dial them or instructed others to do the same.

59. Plaintiff was harmed by these calls. He was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. He was charged for the calls. Moreover, these calls injured

Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff.

## Legal Claims

### Count One:
### Violation of the TCPA's Prohibition Against Calling Numbers with an ATDS

60. By placing at least twelve telemarketing calls to the Plaintiff using an ATDS, Defendants, jointly and severally, violated 47 U.S.C. § 227(b)(1)(A)(iii).

61. This amounts to twelve violations since Defendants used an ATDS to call a number for which the called party is charged for the call twelve times. 47 U.S.C. § 227(b)(1)(A)(iii).

62. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute at least twelve violations of the TCPA, 47 U.S.C. § 227(b), by making calls, except for emergency purposes, to the telephone line of Plaintiff through the initiation of calls using an ATDS to a number for which the called party is charged for the calls.

63. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(b), Plaintiff is entitled to an award of $500 in damages for each and every violation and call made to his telephone line which was initiated using an ATDS to his number, which is charged for the calls, in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

64. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating these provisions in 47 U.S.C. § 227(b) in the future.

65. The Defendants' violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B).

## Count Two:
## Violation of the Pennsylvania Telemarketer Registration Act
## 73 Pa. Cons. Stat. § 2241

66. By placing at least twelve telemarketing calls to the Plaintiff without registering as telemarketers under Pennsylvania law, Defendants, jointly and severally, violated 73 Pa. Cons. Stat. § 2243. Moreover, by failing to identify themselves and by sending inaccurate and invalid caller ID information, Defendants, jointly and severally violated 73 Pa. Cons. Stat. § 2245(5) and 2245.1.

67. This constitutes twelve violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. 73 Pa. Cons. Stat. § 2246(a).

68. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the Pennsylvania Telemarketer Registration Act (PTRA), 73 Pa. Cons. Stat. § 2241, including by making calls to Plaintiff's number, on the Pennsylvania Do-Not-Call registry, without registration.

69. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the PTRA, 73 Pa. Cons. Stat. § 2241, Plaintiff is entitled to an award of $300 in damages for each and every call made to his telephone number in violation of the statute, pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201. *See* 73 Pa. Cons. Stat. § 2246(a).

70.     Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the PTRA in the future.

### Count Three:
### Violation of the TCPA's Implementing Regulations
### Codified at 47 C.F.R. § 64.1200

71.     By placing at least twelve telemarketing calls to the Plaintiff, whose number is on the Do-Not-Call registry, failing to have a written Do-Not-Call policy, and failing to maintain the Plaintiff on their Do-Not-Call list, Defendants, jointly and severally, violated 47 U.S.C. § 227(c)(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c) and (d).

72.     This amounts to thirty-six violations since Defendants committed three violations per call. The first violation is calling a number on the national Do-Not-Call registry. 47 C.F.R. § 64.1200(c)(2). The second violation is by calling Plaintiff without having a Do-Not-Call policy in place. 47 C.F.R. § 64.1200(d)(1). The third violation is by calling Plaintiff without maintaining the Plaintiff on their internal Do-Not-Call list. 47 C.F.R. § 64.1200(d)(6).

73.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute at least thirty-six violations of the TCPA, 47 U.S.C. § 227(c), codified at 47 C.F.R. § 64.1200, by, *inter alia*, refusing to scrub against the National Do-Not-Call registry,  refusing to maintain Mr. Perrong's number on an internal Do-Not-Call list, and failing to have a Do-Not-Call policy.

74.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(c), Plaintiff is entitled to an award of $500 in damages for each and every call and violation made to his telephone number

in violation of the TCPA's implementing regulations codified at 47 C.F.R. § 64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

75. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the TCPA, 47 U.S.C. § 227(c), by making calls in violation of any of the TCPA's implementing regulations in the future.

76. The Defendants' violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B).

## Relief Sought

WHEREFORE, Plaintiff requests the following relief:

    a. Injunctive relief prohibiting Defendants from calling telephone numbers using an ATDS, and/or in violation of the PTRA, and/or in violation of the TCPA's implementing regulations.

    b. Because of Defendants' violations of the TCPA's restrictions in 47 U.S.C. § 227(b), Plaintiff Perrong seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

    c. Because of Defendants' violations of the PTRA, Plaintiff Perrong seeks for himself $300 in damages for each violation, pursuant to 73 Pa. Cons. Stat. § 201-9.2(a).

    d. Because of Defendants' violations of the TCPA's implementing regulations, Plaintiff Perrong seeks for himself $500 in damages for each violation or—where

such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(c)(5).

  e. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: **November 23, 2020**

_____/s/_____
Andrew Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com
